UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MarChris Leondard Bates,

           Plaintiff,      Case No. 21-11040

v.      Judith E. Levy
      United States District Judge

Heidi E. Washington, *et al.*,

      Mag. Judge Kimberly G. Altman

           Defendants.

_____/

**OPINION AND ORDER DENYING [2, 3], DISMISSING THE JACKSON ADMINISTRATION AS A DEFENDANT AND REINSTATING DEFENDANTS**

Plaintiff Marchris Leonard Bates, a state prisoner in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil rights complaint on April 9, 2021. (ECF No. 1.) Before the Court are two motions for equitable relief from Plaintiff. In one motion, Plaintiff seeks preliminary injunctive relief and a temporary restraining order regarding conditions at the Reception and Guidance Center ("RGC") correctional facility in Jackson, Michigan. (ECF No. 2.) In the other motion, Plaintiff seeks a "preliminary injunctive-prisoner release order"

for his transfer to the Calhoun County Justice and Detention Center. (ECF No. 3.)

At the time Plaintiff filed his original complaint and the two motions before the Court, he was incarcerated at the MDOC's intake center, the RGC. On May 14, 2021, Plaintiff was transferred to the Central Michigan Correctional Facility ("CMCF"). (ECF No. 8, PageID.152; *see also* ECF No. 7.) Following his transfer, Plaintiff filed an amended complaint about his confinement at the RGC. (*See* ECF No. 8.)

The Court has reviewed the two complaints (ECF Nos. 1, 8), Plaintiff's exhibits (ECF No. 4), and the two pending motions seeking protection from the conditions of confinement at the RGC (ECF Nos. 2, 3). For the reasons set forth below, the Court denies Plaintiff's motions (ECF Nos. 2, 3), reinstates Defendants Kim Cargor[1], Mann, Brant, Folarin, Carpenter, Klinko, and J. Jarrett, and dismisses the Jackson Administration as a Defendant.

I. **Background**

    A. **Claims**

---

[1] This Defendant is listed as "Kim Carror" on the docket for this case, in error.

2

Plaintiff writes that he was sent to the RGC, "an intake center which serves as quarantine for persons committed to serve prison terms," for violating parole in his state case on November 10, 2020. (ECF No. 1, PageID.7–8, 10.) In his original complaint, Plaintiff names several employees of the MDOC as Defendants. (*See id.*, PageID.2–5). Heidi E. Washington is the Director of the MDOC. (*Id.* at PageID.2.) Defendant Kim Cargor was the acting warden of the RGC until April 26, 2021, Defendants Mann, Brant, Folarin, Carpenter, and Klinko were corrections officers at the RGC, and Defendant J. Jarrett was an assistant deputy warden at the RGC. (*See* ECF No. 1, PageID.3–5.) Plaintiff sues Defendants Washington, Cargor, Carpenter, and Jarett in their official capacity and the other Defendants in their individual and official capacities. (*Id.* at PageID.2–5.)

Plaintiff alleges that Defendants' actions amount to violations of his rights under 42 U.S.C. §1983. He states that on November 16, 2020, the RGC was placed on "outbreak" status due to the COVID-19 pandemic. (*See* ECF No. 1, PageID.8.) Plaintiff claims that during the outbreak, RGC staff took no precautions under the guidelines established by the Centers for Disease Control ("CDC") and prevented him from taking his

own safety precautions. Plaintiff alleges that he was denied an opportunity to sanitize and sterilize a cell previously occupied by another inmate (*see Id.* at PageID.9), though he managed to clean his cell with a state-issued bar of soap, which dissolved during the process (*see Id.*). Defendants also denied his requests for cleaning supplies and basic toiletries. (*Id.* at PageID.11–12.) Plaintiff stopped eating meals prepared at the RGC when he learned that infected prisoners prepare, package, and serve the food and because he feared that a carrier of the virus would transmit COVID-19 through the food. (ECF No. 1, PageID.13.) Thereafter, he ate only commissary items that were sealed by the manufacturer. (*Id.* at PageID.18, 26, 32–33.)

Plaintiff alleges that Defendants disregarded his requests for more precautions against COVID-19. Although Plaintiff expressed concern about the unsanitary conditions and failure to take measures to prevent the spread of COVID-19 to RGC staff, they told him that a prisoner must contract the virus to be eligible for a transfer. (*See Id.* at PageID.10–11.) His requests for placement in protective custody and segregation were also repeatedly denied due to the lack of bed space in those areas. (*Id.* at PageID.11.)

4

Through Plaintiff's drastic measures, he managed to stay healthy and virus-free. (*Id.* at PageID.19.) However, he endured the ridicule of staff and prisoners. (*See, e.g.*, ECF No. 1, PageID.26.)

On May 14, 2021, prison officials transferred Plaintiff to the CMCF in St. Louis, Michigan. (ECF No. 8, PageID.152.) During the two-hour ride, prisoners were unable to cover their faces when coughing or sneezing, and social distancing was not possible. (*Id.* at PageID.152–153.) On June 15, 2021, Plaintiff notified the Court that he was transferred to the CMCF (ECF No. 7) and filed an amended complaint (ECF No. 8).

In his amended complaint, Plaintiff states that he was informed "that [COVID-19] protocols are strictly enforced at the Central Michigan Correctional Facility." (*Id.* at PageID.154.) Plaintiff adds that that CMCF personnel provide much more "humane treatment and living conditions for prisoners" and that they more effectively manage COVID-19 prevention and safety than staff and administration at the RGC. (*See Id.*) Nonetheless, Plaintiff seeks relief for the deprivations he suffered at the RGC. (*See id.* at PageID.154–155.)

In his original complaint, Plaintiff raises three claims: first, the staff and administration at the RGC are not taking measures to control

5

and prevent the spread of COVID-19, and their conduct regarding transfers and cell moves, personal hygiene, and the cleanliness of housing units is grossly negligent (ECF No. 1, PageID.8); second, the staff and administration at the RGC are grossly negligent with the food service and the screening of prisoners (*id.* at PageID.13); and third, MDOC officials acted with deliberate indifference by exposing him to a serious communicable disease at the RGC without regard for the human health risks (*id.* at PageID.20). In the amended complaint, Plaintiff adds a fourth claim, that the RGC staff, wardens, and administration failed to provide him with reasonable safety and acted with callous neglect. (ECF No. 8, PageID.142.) He also adds the Jackson Administration as a Defendant.[2]

---

[2] Plaintiff does not list Defendants Kim Cargor, Mann, Brant, Folarin, Carpenter, Klinko, and J. Jarrett in the "Parties" section of the amended complaint form (*see* ECF No. 8, PageID.138), and they were terminated from the docket of this case on June 15, 2021. Based on the amended complaint the Court finds that the termination of these Defendants from the Electronic Case Filing System was unwarranted.

The Court interprets Plaintiff's amended complaint as adding to his original complaint without removing anything from it. First, Plaintiff incorporates the original complaint by reference throughout the amended complaint. (*See, e.g.*, ECF No. 8, PageID.140–141, 161–164, 166–167.) Second, Plaintiff begins the amended complaint claims at four, showing that he assumes that the claims from the original complaint are included in the amended complaint. (*See* ECF No. 8, PageID.142.)

## B. The Motions

On April 9, 2021, the same day that Plaintiff filed his initial complaint, he filed two motions for preliminary injunctive relief. (ECF Nos. 2, 3.) In the filing entitled "motion for preliminary injunctive relief and temporary restraining order," Plaintiff alleges that conditions at the RGC expose him to great risk of contracting COVID-19, and therefore, great danger of irreparable harm. (*See* ECF No. 2, PageID.67.) Specifically, Plaintiff contends that at the RGC, Defendants did not take substantial steps to decrease the inmate population, that isolation areas were "non-existent," and that hygiene and sanitation efforts at the facility were grossly inadequate. (*Id.* at PageID.68–70.) He also states that staff and some prisoners ridiculed him for taking extreme measures to remain healthy and COVID-free and that he should not have to wait until he becomes infected with COVID-19 to become eligible for relief. (*Id.* at PageID.73.) He argues that these deficiencies are unsafe, inhumane, and expose him daily to unreasonable risk of serious damage to his health. (*See Id.* at PageID.60–71.)

---

Accordingly, it appears that Plaintiff did not intend to remove Defendants in the amended complaint.

He seeks to bar state officials from confining him in any Michigan prison or correctional center until the MDOC takes twenty specific steps to control the spread of COVID-19 at the RGC (*Id*. at 73, 76–86.)

In the other filing, entitled "preliminary injunctive-prisoner release order," Plaintiff reiterates his allegations that the unsafe conditions at the RGC leave him particularly vulnerable to contracting COVID-19. (*See* ECF No. 3.) He writes that if the Court were to grant the prisoner release order (ECF No. 3) and transfer him to "Calhoun County's Justice and Detention Center where all interim [CDC] guidances on management of Coronavirus disease are followed," he will "escape the hardships of the increased risk of future physical harm" while still paying his debt to society. (ECF No. 3, PageID.96.)

## II. Legal Framework

### A. Mootness

"Article III of the Constitution restricts the power of federal courts to 'Cases' and 'Controversies.'" *Chafin v. Chafin*, 568 U.S. 165, 171 (2013).

A claim becomes "moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the

outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (*per curiam*)). "[A] case may become moot at any stage of the litigation." *Graveline v. Benson*, 992 F.3d 524, 533 (6th Cir. 2021) (quoting *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584 (6th Cir. 2006)). If events occur that "deprive the court of the ability to give meaningful relief" on a particular claim, then it is moot, and must be dismissed. *See Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019) (where a court cannot give meaningful relief because of events that occurred after the filing of an action, the case is moot).

The "test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Sullivan*, 920 F.3d at 410 (quoting *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir.1997) (*en banc*)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit" the claim for relief is moot if the dispute "'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Sullivan*, 920 F.3d at 410 (quoting *Already, LLC*, 568 U.S. at 91).

9

A court may consider whether a claim for relief is moot on its own initiative because mootness may deprive it of jurisdiction over the claim. *See Thomas v. City of Memphis, Tennessee*, 996 F.3d 318, 329 (6th Cir. 2021) (considering whether a claim was moot on its own initiative).

### B. Parties to a §1983 Claim

42 U.S.C. §1983 provides a right of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any state . . . . subjects or causes to be subjected" the deprivation of any constitutional "rights, privileges, or immunities" of any person within federal jurisdiction. However, "Eleventh Amendment immunity 'bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens.'" *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (quoting *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993)). It is also well established that § 1983 does not abrogate the Eleventh Amendment immunity. *See Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

## III. Analysis

### A. The Motion for Preliminary Injunctive Relief and a Temporary Restraining Order (ECF No. 2)

10

Plaintiff seeks a preliminary injunction and temporary restraining order barring his incarceration in any Michigan facility until the MDOC takes twenty measures to protect inmates from COVID-19 *at the RGC*. (*See* ECF No. 2, PageID.76–86.) He specifies that the basis for this motion is Defendants' failure to abide by CDC guidelines regarding COVID-19 management in correctional and detention facilities at the RGC and provide safe living conditions there. (*See* ECF No. 2, PageID.67–75; *see also* ECF No. 1, PageID.27, 35 (events giving rise to the claims occurred at the RGC while Plaintiff was incarcerated there); ECF No. 8, PageID.161, 164 (same).)

However, Plaintiff is not currently incarcerated at the RGC. (*See* ECF Nos. 7, 8, 10.) Due to his transfer to the CMCF, Plaintiff no longer has a "legally cognizable interest[3]" in the conditions at the RGC. The relief sought would make no difference to his legal interests. Accordingly, Plaintiff's claims for a temporary restraining order because of conditions

---

[3] Plaintiff has no standing to raise arguments on behalf of others. *See Barnett v. Luttrell*, 414 F. App'x 784, 787 (6th Cir. 2011) (citing *Jones v. Caruso*, 569 F.3d 258, 276-77 (6th Cir. 2009)).

11

at the RGC and his request for a preliminary injunction requiring changes to the functioning of the RGC are moot.

### B. The Motion for Preliminary Injunctive Prisoner Release Order (ECF No. 3)

Plaintiff's motion for a preliminary injunction ordering a transfer to the Calhoun County Justice Center ("Calhoun") is also moot. Plaintiff explains that he seeks this transfer from the RGC because the conditions of incarceration there increased his risk of contracting COVID-19. (*See* ECF No. 3, PageID.95; *see also* ECF No. 1, PageID.27, 35 (events giving rise to claims in the complaint occurred at the RGC while Plaintiff was incarcerated there); ECF No. 8, PageID.161, 164 (same).) He makes no allegation that the conditions of his incarceration at the CMCF are similarly dangerous to the RGC. Instead, on issues of humane treatment, living conditions, and the management of COVID-19, Plaintiff describes difference between the Jackson Administration at the RGC and the administration at the CMCF as comparable to "night and day." (ECF No. 8, PageID.154.)

Because Plaintiff is already incarcerated at a facility that he alleges follows COVID-19 safety protocols, the CMCF, a transfer to Calhoun

12

would not provide him with meaningful relief. Accordingly, the Court denies Plaintiff's motion for release from the RGC to Calhoun.

### C. The Jackson Administration is Dismissed

Plaintiff lists the Jackson Administration as a Defendant in his amended complaint. He does not describe the "Jackson Administration," but he appears to mean the State of Michigan or the MDOC. (*See* ECF No. 8, PageID.139 (listing "State of Michigan Corrections" and "State of Michigan" in the description fields).)

Under the Prison Litigation Reform Act of 1996 (PLRA), "[d]istrict courts are required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel . . . ." *In re Prison Litigation Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997). When screening a prisoner's complaint, a district court ordinarily "must examine 28 U.S.C.A. § 1915(e)(2) and 28 U.S.C.A. § 1915A." *Id.*[4]

---

[4] In explaining these two statutory provisions, the Sixth Circuit stated that:

[t]he requirements of § 1915(e)(2) overlap the criteria of § 1915A. Section 1915A is restricted to prisoners who sue government entities, officers, or employees. In contrast, § 1915(e)(2) is neither restricted to actions brought by prisoners, nor to cases involving government defendants. Further, § 1915A is applicable at the initial stage of the litigation. Section 1915(e)(2) is applicable throughout the entire litigation process. Thus, a case that may not appear to initially meet §

13

Plaintiff prepaid the filing fee for this action after the Court entered a deficiency order, and § 1915(e)(2) applies only to litigants who are proceeding *in forma pauperis*. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *Benson v. O'Brian*, 179 F.3d 1014, 1016–17 (6th Cir. 1999). *Apple* and *Benson*, however, do not prohibit a federal court from screening and dismissing a prisoner's fee-paid civil rights complaint against a governmental official or entity under § 1915A. *Hyland v. Clinton*, 3 F. App'x 478, 478–79 (6th Cir. 2001); *accord Espinoza Vallecillo v. Michigan*, No. 2:19-CV-13354, 2020 WL 85929, at *2 (E.D. Mich. Jan. 7, 2020). And under § 1915A

> [i]f the civil action seeks redress from a governmental entity, officer, or employee, the district court must dismiss the complaint, or any portion of the complaint, which (a) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (b) seeks monetary relief from a defendant who is immune from monetary relief."

*In re Prison Litig. Reform Act*, 105 F.3d at 1134.

---

1915(e)(2) may be dismissed at a future date should it become apparent that the case satisfies this section. Therefore, in prisoner cases, the district court must first examine a complaint under § 1915A and then review the complaint under § 1915(e)(2) before the case may proceed in normal course.

*In re Prison Litig. Reform Act*, 105 F.3d at 1134.

14

"[A] State is not a person within the meaning of § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989). Additionally, the Eleventh Amendment bars suits against a state or one of its agencies or departments unless the state has consented to suit or Congress has expressly abrogated Eleventh Amendment immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "It is well established that § 1983 does not abrogate the Eleventh Amendment and that Michigan has not consented to the filing of civil rights suits against it in federal court." *Harrison*, 722 F.3d at 771 (internal citations omitted).

Here, the Eleventh Amendment prohibits Plaintiff from suing the State of Michigan and its Corrections Department, and thus the party Plaintiff lists as the Jackson Administration. Accordingly, the Court dismisses this Defendant.

### D. Reinstating Previously Terminated Defendants

It appears that Defendants Kim Cargor, Mann, Brant, Folarin, Carpenter, Klinko, and J. Jarrett were terminated from this case on June 15, 2021. The Court reinstates these Defendants because, as explained above, it appears that Plaintiff did not intend to dismiss them from the action.

15

## IV. Conclusion

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Preliminary Injunctive Relief and a Temporary Restraining Order (ECF No. 2) and his Motion for Release (ECF No. 3). The Court DISMISSES the Jackson Administration. The Clerk of the Court is ordered to REINSTATE Defendants Kim Cargor, Mann, Brant, Folarin, Carpenter, Klinko, and J. Jarrett to this action.

IT IS SO ORDERED.

Dated: February 4, 2022        s/Judith E. Levy
Ann Arbor, Michigan            JUDITH E. LEVY
                               United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 4, 2022.

                               s/William Barkholz
                               WILLIAM BARKHOLZ
                               Case Manager